UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| US BANK NA, AS LEGAL TITLE TRUSTEE FOR TRUMAN 2012 SC2 TITLE TRUST,<br><br>Plaintiff,<br><br>v.<br><br>JOHN DIRWAYI, et al.,<br><br>Defendants.<br>_____<br><br>JOHN DIRWAYI and NATALIYA S. KAZIMEIRETS,<br><br>Third-Party Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A., RUSHMORE LOAN MANAGEMENT SERVICES, LLC,<br><br>Third-Party Defendants. | CASE NO. C17-5532 BHS<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND THIRD-PARTY DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT |

This matter comes before the Court on Third-Party Defendant Wells Fargo Bank, N.A.'s ("Wells Fargo") motion to dismiss for failure to state a claim (Dkt. 14); and Third-Party Defendant Rushmore Loan Management Services, LLC ("Rushmore") and Plaintiff

US Bank NA's ("US Bank") motion for summary judgment (Dkt. 34). The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby rules as follows:

## I. PROCEDURAL AND FACTUAL BACKGROUND

On July 30, 2017, Defendants and Third-Party Plaintiffs John Dirwayi and Nataliya Kazimirets ("Dirwayis") executed a note and deed of trust to secure a home in Fife, Washington ("Residence"). Dkt. 1-1, Exhs. A–B. In 2009, the original lender assigned the deed to Wells Fargo, which resulted in Wells Fargo also servicing the note. *Id.*, Exh. C.

In 2009, the Dirwayis requested mortgage payment assistance. Dkt. 33, ¶ 7. On January 27, 2010, the Dirwayis and Wells Fargo entered into a loan modification agreement. *Id.* at 41–42.

In 2011, the Dirwayis approached Wells Fargo regarding another loan modification. On May 14, 2011, Wells Fargo wrote the Dirwayis informing them that they "may be eligible for a modification offered by Fannie Mae (the owner of your loan)." *Id.* at 44. Wells Fargo instructed the Dirwayis that, to accept the offer, they were required to make three trial period payments instead of the regular monthly payments. *Id.* The letter also states that "[a]fter all trial period payments are timely made, your mortgage will be permanently modified." *Id.* In a "frequently asked questions" supplement, Wells Fargo stated that "[y]our loan will not be permanently modified until you successfully complete the Trial Period Plan and you enter into a Loan Modification" and that "[o]nce you make all of your trial period payments on time, we will send you a

Loan Modification Agreement detailing the terms of the modified loan. The Loan Modification Agreement will become effective once you and we have signed it." *Id*. at 46–47. It is undisputed that the Dirwayis timely made the trial payments.

On September 9, 2011, Wells Fargo wrote the Dirwayis informing them that they were eligible for a loan modification and enclosed a modification agreement ("Second Modification"). *Id*. at 51. The letter stated that, "[i]f you comply with the terms of the required Trial Period Plan, we will modify your mortgage . . . ." *Id*. In order to accept the offer, Wells Fargo instructed the Dirwayis to sign and return both copies of the Second Modification. *Id*. The Dirwayis were interested in the modification, so they signed the Second Modification and returned it to Wells Fargo. Nataliya, however, signed the Second Modification as "N. Dirwayi/N. Kazimirets" when the printed name below the signature line was "Nataliya S. Kazimirets." *Id*. at 58. Wells Fargo rejected the documents because Nataliya's signature did not match the printed signature.

Wells Fargo sent a second set of documents to the Dirwayis with instructions to sign the documents exactly as it appears on the document. *Id*. at 60. On October 8, 2011, the Dirwayis signed the documents, but Nataliya signed as "N. Kazimirets." *Id*. at 65. The Dirwayis returned the documents and continued to remit the reduced monthly payments. Wells Fargo rejected the documents, and the delay violated Fannie Mae's requirement that the documents be signed by October 1, 2011.

In early 2012, Wells Fargo requested updated financial information from the Dirwayis. *Id*. at 67–82. On March 28, 2012, Wells Fargo informed the Dirwayis that they did not qualify for a loan modification under the Home Affordable Modification

Program. *Id*. at 92–93. On April 3, 2012, Wells Fargo wrote the Dirwayis informing them that they may be eligible for a modification through Fannie Mae. *Id*. at 96–101. The Dirwayis rejected the proposed modification and trial payment plan.

On July 23, 2012, Wells Fargo referred the Dirwayis' loan for foreclosure proceedings. On September 27, 2012, the foreclosing Trustee, Quality Loan Service Corp. of Washington, recorded a notice of trustee's sale scheduled for January 25, 2013. *Id*. at 106–109. On November 5, 2012, Wells Fargo transferred the loan to US Bank and transferred servicing of the loan to Rushmore. *Id*. at 111–112; Dkt. 34-1 ¶ 7.

On July 26, 2013, the Dirwayis filed suit in state court to stop the foreclosure proceeding and asserted a claim for breach of the Second Modification. At some point in early 2014, the parties reached a settlement. On April 29, 2014, the Dirwayis' attorney sent Rushmore's attorney signed copies of another loan modification agreement ("2014 Proposed Modification"). Dkt. 34-3. The proposed payment amount was similar to the Second Modification, and both agreements establish a 40-year payment plan. *Id*. The new modification, however, indicated an increased deferred principal balance. *Id*. Although the Dirwayis signed the agreement, their attorney instructed Rushmore's attorney to hold the signed copies in trust until the Dirwayis delivered a countersigned copy of the settlement agreement. *Id*.

On May 29, 2014, all parties in the suit executed a notice of settlement, and the court subsequently dismissed the complaint without prejudice. US Bank and Rushmore assert that, "in order to accommodate" the Dirwayis, they "entered a system adjustment" to alter the terms of the loan. *Id*. ¶ 12. The altered terms appear to be consistent with the

terms of the 2014 Proposed Modification. *Id*. After the adjustment, the Dirwayis made payments of $2,058.81 from May 2014 to May 2015. *Id*. ¶ 13.

In May 2015, Rushmore's attorney sent the Dirwayis' attorney a letter stating that the 2014 Proposed Modification would be revoked if the Dirwayis did not sign and return the proposed settlement agreement. Dkt. 42 at 5. On June 1, 2015, Rushmore's attorney informed the Dirwayis' attorney that he could no longer accept payments on behalf of Rushmore. *Id*. On July 25, 2015, the Dirwayis' attorney sent Rushmore's attorney a letter with the Dirwayis' June 2015 and July 2015 payments. *Id*. at 7. Rushmore's attorney returned the checks and informed the Dirwayis' attorney that Rushmore was in the process of revoking the loan modification agreement because the Dirwayis failed to enter the settlement agreement. *Id*.

On April 27, 2016, US Bank filed the instant judicial foreclosure action. Dkt. 1-1 at 2–39. On June 6, 2017, the Dirwayis filed an answer with affirmative defenses and counterclaims and included a third-party complaint. Dkt. 1-1 at 40–58. The Dirwayis asserted counterclaims against US Bank for breach of contract and violation of the Washington Consumer Protection Act ("CPA"), RCW Chapter 19.86. *Id*. In the third-party complaint, the Dirwayis asserted claims against Wells Fargo and Rushmore for breach of contract, equitable indemnity, unjust enrichment, and violations of the CPA. *Id*.

On August 31, 2017, Wells Fargo filed a motion to dismiss. Dkt. 14. On November 15, 2017, the Court converted the motion to a motion for summary judgment and requested subsequent briefing. Dkt. 25. On January 26, 2018, Wells Fargo filed an

opening brief.  Dkt. 32.  On February 15, 2018, US Bank and Rushmore filed a motion for summary judgment.  Dkt. 34.  On February 28 and March 5, 2018, the Dirwayis responded.  Dkts. 39, 41.  On March 8 and 9, 2018, Wells Fargo, US Bank, and Rushmore replied.  Dkts. 43, 44.

## II. DISCUSSION

### A. Standard

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt").  *See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.     Breach of Contract**

A contract requires offer, acceptance, and consideration. *See Yakima County Fire Protection Dist. No. 12 (West Valley) v. Yakima*, 122 Wn.2d 371, 389–90 (1993). A breach of contract is actionable if "the contract imposes a duty, the duty is breached, and the breach proximately causes damage to the claimant." *Northwest Indep. Forest Mfrs. v. Dep't of Labor & Indus.*, 78 Wn. App. 707, 712 (1995). To form a contract, the parties must objectively manifest their mutual assent to the definite terms of an offer. *Keystone Land & Dev. Co. v. Xerox Corp.*, 152 Wn.2d 171, 177–78 (2004). Whether there was mutual assent is a question of fact. *Id*. at 178 n.10.

In this case, the parties dispute the enforceability of the Second Modification. Wells Fargo argues that a "prerequisite to a written contract being binding and

enforceable is the defendant's signature." Dkt. 44 at 4 (citing *Rutherford v. Chase Bank*, N.A., 2:13-CV-01175-MJP, 2014 WL 4540066 (W.D. Wash. Sept. 11, 2014)). Wells Fargo, however, reads *Rutherford* too broadly. Instead, the Court in *Rutherford* addressed a situation in which the lender included an express requirement that "[t]he Agreement will not be binding or effective until it has been signed by both you and the lender in compliance with the instructions and conditions in this letter." 2014 WL 4540066 at *3. Although the borrower declared that he signed and returned the documents, the borrower never received a signed copy of the modification agreement from the lender. *Id*. Thus, *Rutherford* stands for the unremarkable proposition that all conditions of the offer must be satisfied before the parties have entered a legally binding contract.

Contrary to the lender's cover letter in *Rutherford*, Wells Fargo has failed to show that its letter explicitly stated conditions of the offer. In fact, the letter states that "if you comply with the terms of the required Trial Period Plan, we will modify your mortgage and may waive all prior late charges that remain unpaid." Dkt. 33 at 51. The letter also provides that "To Accept This Offer" the Dirwayis must do two things: (1) sign and return both copies of the modification agreement and (2) make all remaining trial period payments. *Id*. Wells Fargo did not require any particular signature or that Wells Fargo sign and return the documents to the Dirwayis before the agreement became effective. Therefore, the Court rejects Wells Fargo's argument that the Second Modification is not a legally binding contract because the Dirwayis failed to comply with all conditions of the offer.

After the Dirwayis signed and returned the Second Modification, Wells Fargo rejected the documents and explicitly instructed the Dirwayis to sign exactly as the preprinted name and return no later than October 11, 2011. *Id*. at 60. Although the parties didn't address this issue, it seems that Wells Fargo unilaterally changed the conditions of the offer after the Dirwayis accepted the offer. Moreover, even if the Dirwayis complied with Wells Fargo's instructions, it is undisputed that Fannie Mae's deadline was October 1, 2011. The Court declines to *sua sponte* address these issue and concludes that, at the very least, Wells Fargo has failed to meet its burden to show that it is entitled to summary judgment as a matter of law on the Dirwayis' breach of contact claim. Thus, the Court will address Wells Fargo's other arguments of failure to perform, statute of frauds, and lack of consideration.

Regarding US Bank's motion, its argument appears to be inconsistent with US Bank's complaint for judicial foreclosure. US Bank alleges that the Dirwayis and Wells Fargo entered the Second Modification, Dkt. 1-1, but seeks summary judgment on the Dirwayis' breach of contract counterclaim because the Dirwayis have failed to establish that the Second Modification is a legally binding contract, Dkt. 34 at 15–16. US Bank contends that the complaint could have been drafted differently and that it is not verified. While true, it would be unusual to grant summary judgment for US Bank in such a way that it would contradict US Bank's own complaint. Regardless, the Court may also deny US Bank's motion because no party has established that the Second Modification fails as a matter of law.

### C. Performance

"If a contract requires performance by both parties, the party claiming nonperformance of the other must establish as a matter of fact the party's own performance." *Willener v. Sweeting*, 107 Wn.2d 388, 394 (1986) (citing *Reynolds Metals Co. v. Electric Smith Constr. & Equip. Co.*, 4 Wn. App. 695 (1971)).

In this case, Wells Fargo argues that the Dirwayis are precluded from asserting a breach of contract claim because they failed to perform under the Second Modification. The Dirwayis counter that Wells Fargo repudiated the Second Modification when they returned money to the Dirwayis and transferred the loan to US Bank to initiate foreclosure proceedings. Dkt. 39 at 5. Wells Fargo transferred the loan on November 5, 2012. Wells Fargo asserts that, at that time, the Dirwayis had only made eleven of the sixteen required payments under the Second Modification. Dkt. 44 at 8 n. 3. On the other hand, Mr. Dirwayi declares that they made every payment through November 2012. Dkt. 40 at 107, ¶ 5. This evidence creates a question of fact on this issue. Therefore, the Court denies Wells Fargo's motion on this issue.

Regarding US Bank's motion, it mixes a failure to perform argument with failure to show causation on a breach of contract claim. Dkt. 34 at 16–17. Despite this confusion, it is undisputed that the Dirwayis have failed to make all timely payments under any loan agreement. Once the state court case was dismissed, the Dirwayis consistently made payments in accordance with the 2014 Proposed Modification. After a year of failing to enter a settlement agreement, Rushmore initiated foreclosure and sent two notices of its intent to foreclose. Dkt. 34-3 at 30–38. Instead of attempting to cure

the default, the Dirwayis stopped making payments. The Dirwayis contend that they sent May and June 2015 payments to Rushmore's attorney, and he rejected them. Dkt. 41 at 6. The Dirwayis, however, sent these payments after Rushmore's attorney stated that he was no longer authorized to accept payments on behalf of Rushmore. Moreover, the Dirwayis offer no evidence whether they responded to Rushmore's notices of foreclosure of whether they sent the May and June 2015 payments directly to Rushmore. Thus, they have failed to establish as a matter of fact their own performance under any modification. *Willener*, 107 Wn.2d at 394. Accordingly, the Court grants US Bank's motion on the Dirwayis' breach of contract counterclaim.

To the extent that the Dirwayis argue that their counterclaim is based on the settlement of their prior dispute or some contract related to that event, the counterclaim does not include any allegation to this effect. *See* Dkt. 1-1 at 48–49, ¶¶ 5.1–5.3. Similarly, to the extent that the Dirwayis argue that the Court should not dismiss their breach of contract claim against Rushmore, the claim only mentions Wells Fargo. *Id*. at 54, ¶¶ 10.–10.5. If the Dirwayis intend to pursue claims based on a contract other than the Second Modification, then they should file the proper motion to amend their pleadings.

**D.     Statute of Frauds**

In Washington, "[d]eeds of trust and trustee's deeds are subject to the statute of frauds." *Glepco, LLC v. Reinstra*, 175 Wn. App. 545, 554 (2013). The statute of frauds provides, in pertinent part:

> In the following cases, specified in this section, any agreement, contract and promise shall be void, unless such agreement, contract or promise, or some note or memorandum thereof, be in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized, that is to say: (1) Every agreement by its terms is not to be performed in one year from the making thereof . . . .

RCW 19.36.010.

In this case, Wells Fargo argues that the Second Modification is unenforceable based on the statute of frauds. It is undisputed that the Dirwayis have failed to produce a copy of the Second Modification signed by Wells Fargo. Thus, Wells Fargo argues that the Dirwayis are seeking to enforce an unsigned contract that either amends a deed of trust or by its terms is not to be performed within one year. The Dirwayis respond with four arguments. First, the Dirwayis contend that, in the cover letter, Wells Fargo promised to permanently modify the loan if the Dirwayis met certain conditions. Dkt. 39 at 11. It seems that the Dirwayis are requesting specific performance of one promise to force Wells Fargo into signing the Second Modification. While interesting, the Dirwayis fail to cite a single authority for this argument. Therefore, the Court rejects this argument.

Second, the Dirwayis argue that the statute of frauds does not apply because the contract does not, by necessity, require more than a year to perform. The Dirwayis correctly assert that they could prepay the loan within one year and, therefore, the alleged contract could have been fully performed within one year. Dkt. 39 at 13. The Dirwayis fail to provide any authority for this proposition, and Wells Fargo failed to respond to this argument, *see* Dkt. 44 at 9–11. The Court, however, conducted independent research and

discovered authority to support the Dirwayis' position. "[I]f, by its terms, performance is possible within one year, however unlikely that may be, the agreement is not within the statute of frauds; and it is also legally immaterial that the actual period of performance exceeded one year." *Malnar v. Carlson*, 128 Wn.2d 521, 534 (1996) (citing John D. Calamari & Joseph M. Perillo, *Contracts* (3d ed. 1987)).  The Court is not concluding that the Dirwayis are legally correct because it is only necessary, for the purposes of the instant motion, to conclude that Wells Fargo has failed to show that it is entitled to judgment as a matter of law.  Therefore, the Court denies Wells Fargo's motion on the issue of whether RCW 19.36.010 precludes enforcement of the Second Modification.

Third, the Dirwayis argue that the statute of frauds does not apply because the Second Modification only alters a payment schedule and not a deed of trust.  Dkt. 39 at 13–14.  The Dirwayis are factually incorrect because the Second Modification amends at least the amount due in the deed.  Dkt. 33 at 56, ¶ 1.  In Washington, "modifications of contracts falling within the statute of frauds must also be made in writing and signed by the party against whom enforcement is sought." *Steadman v. Green Tree Servicing, LLC*, C14-0854JLR, 2015 WL 2085565, at *7 (W.D. Wash. May 5, 2015) (citing *Anderson v. Anderson*, 128 Wash. 504, 507 (1924)).  However, one notable exception is part performance between the parties, which is the Dirwayis' fourth argument against enforcement of the statute of frauds.

"In certain circumstances, the doctrine of part performance saves a contract that does not otherwise satisfy the statute of frauds." *Shelcon Const. Grp., LLC v. Haymond*, 187 Wn. App. 878, 895 (2015) (citing *Losh Family, LLC v. Kertsman*, 155 Wn. App. 458,

465 (2010)). "Unwritten or unsigned agreements are saved under the doctrine of part performance when (1) the contract is proven by clear, cogent, and convincing evidence and (2) the acts constituting part performance 'unmistakably point to the existence of the claimed agreement.'" *Id*. (quoting *In re Marriage of DewBerry*, 115 Wn. App. 351, 361–62 (2003)). In other words, "our law allows the enforcement of unsigned contracts, even where a signature is required, when it is clear from the parties' actions that such a contract existed." *Id*.

In this case, the Dirwayis have submitted sufficient evidence to establish a question of fact on the issue of part performance. The terms and existence of the Second Modification are undisputed. The remaining question is whether Wells Fargo's acts of accepting the Dirwayis payments unmistakably point to the existence of the modification. Wells Fargo contends that it began contacting the Dirwayis in early 2012 informing them that the Second Modification was not effective and foreclosure was a possibility. Based on these facts, Wells Fargo argues that the evidence does not unmistakably point to the existence of the agreement. This argument, however, raises the question of timing because Wells Fargo waited months before contacting the Dirwayis. Wells Fargo provides no authority as to the timing of one party repudiating or objecting to the existence of the agreement. Cases on this issue exist because one party at some time contests the existence of the alleged agreement. The Second Modification established a term of forty years and the question becomes at what point during that term may Wells Fargo claim that the agreement was not properly executed forcing the Dirwayis into foreclosure. The 39th year? Probably not. After five or six months? Maybe. Without

any authority on this issue, the Court concludes that a question of fact exists on the issue of whether the acts constituting part performance unmistakably point to the existence of the Second Modification.

Furthermore, the "clear purpose and intent behind these statutes of frauds is the prevention of fraud." *Miller v. McCamish*, 78 Wn.2d 821, 828 (1971). If the Dirwayis completed every condition that Wells Fargo explicitly required in its offer of the Second Modification, then it would appear fraudulent to reject the agreement months after accepting the Dirwayis' payments. Therefore, the Court denies Wells Fargo's motion on this issue.

**E.     Consideration**

Wells Fargo argues that the Second Modification fails for lack of consideration. "Consideration is 'any act, forbearance, creation, modification or destruction of a legal relationship, or return promise given in exchange.'" *Labriola v. Pollard Grp., Inc.*, 152 Wn.2d 828, 833 (2004) (quoting *King v. Riveland*, 125 Wn.2d 500, 505 (1994)). It is undisputed that the Second Modification would be the modification of a legal relationship. Therefore, the Court denies Wells Fargo's motion on this issue.

**F.     Equitable Indemnity**

The Dirwayis assert a claim for equitable indemnity against Wells Fargo and Rushmore. The elements of such a claim are: "(1) a wrongful act or omission by A toward B; (2) such act or omission exposes or involves B in litigation with C; and (3) C was not connected with the initial transaction or event, viz., the wrongful act or omission of A toward B." *Newport Yacht Basin Ass'n of Condo. Owners v. Supreme Nw., Inc.*,

| | |
|---|---|
| 1 | 168 Wn. App. 86, 105 (2012) (citing *Manning v. Loidhamer*, 13 Wn. App. 766, 769 |
| 2 | (1975)). "[T]he critical inquiry under the causation element of equitable indemnity is |
| 3 | whether, apart from A's actions, B's own conduct caused it to be 'exposed' or 'involved' |
| 4 | in litigation with C." *Tradewell Grp., Inc. v. Mavis*, 71 Wn. App. 120, 129 (1993). |
| 5 | In this case, the Dirwayis argue that Wells Fargo should equitably indemnify them |
| 6 | because Wells Fargo wrongfully repudiated the Second Modification. Dkt. 39 at 15–16. |
| 7 | The Dirwayis' own conduct, however, caused it to be exposed to litigation with US Bank. |
| 8 | Regardless of whether the loan terms were never modified or the parties entered a valid |
| 9 | and enforceable modification, the Dirwayis stopped making payments in June 2015 and |
| 10 | failed to cure after receiving multiple notices of default. That is the reason US Bank |
| 11 | initiated this foreclosure action. Therefore, the Court grants Wells Fargo and Rushmore's |
| 12 | motions on the Dirwayis' equitable indemnity claims. |

**G.     Unjust Enrichment**

"Unjust enrichment is the method of recovery for the value of the benefit retained absent any contractual relationship because notions of fairness and justice require it." *Young v. Young*, 164 Wn.2d 477, 484 (2008). "The three-year statute of limitations applicable to actions on unwritten contracts applies to an action for unjust enrichment." *Hart v. Clark Cty.*, 52 Wn. App. 113, 116 (1988).

In this case, Wells Fargo and Rushmore move for judgment on the Dirwayis' unjust enrichment claim. First, Wells Fargo contends that the claim is barred by the statute of limitations and otherwise fails on the merits. The Dirwayis failed to respond to Wells Fargo's motion on this issue. In the absence of evidence to the contrary, the Court

agrees that the Dirwayis' claim is barred by the three-year statute of limitations. Wells Fargo transferred the loan in November 2012, and the Dirwayis did not file the claim until June 2017, which is more than three years later. Therefore, the Court grants Wells Fargo's motion on this issue.

Second, the Dirwayis' claim fails on the merits because they fail to show that either Rushmore or Wells Fargo have been unjustly enriched. Even if the Second Modification is valid, the Dirwayis have failed to make all payments under whatever contract is ultimately the controlling contract. It is undisputed that they have failed to make full payments under the original loan terms. The Dirwayis have also failed to make all payments under the modifications. Thus, they have failed to show that any opposing party has unjustly retained payments. Accordingly, the Court grants Wells Fargo and Rushmore's motions on the Dirwayis' unjust enrichment claims.

**H.    CPA**

Under the CPA, a person may bring a civil action against a business to recover damages stemming from any "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020. "To establish a claim under the CPA, five elements must be established: '(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation.'" *Svendsen v. Stock*, 143 Wn.2d 546, 553 (2001) (quoting *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780 (1986)).

In this case, US Bank, Wells Fargo and Rushmore move for judgment on the Dirwayis' CPA claim. First, the parties assert that the Dirwayis have failed to submit sufficient evidence on the public interest element. The Court agrees. "[A] plaintiff can establish that the lawsuit would serve the public interest by showing a likelihood that other plaintiffs have been or will be injured in the same fashion." *Trujillo v. Nw. Tr. Servs., Inc.*, 183 Wn.2d 820, 835 (2015). The Dirwayis fail to submit evidence that others have been injured in the same manner they allege that they have been injured. Moreover, the unique facts of this case establish that it is highly unlikely that others will suffer similar injury. This case involves an alleged modification, rejection of the modification, transferring of the loan, litigation to enforce the modification, a failed settlement, payments under the failed settlement, failure to cure default, and then the initiation of a judicial foreclosure. The Dirwayis have failed to show that another complicated fact pattern is *likely* to occur. Therefore, the Court grants US Bank, Wells Fargo and Rushmore's motion on this issue.

Second, the Dirwayis have also failed to submit sufficient evidence to establish causation. It is undisputed that they have failed to make timely payments under any agreement, alleged agreement, or proposed agreement. That is the cause of this foreclosure proceeding and not the opposing parties' failures to honor agreements. Therefore, the Court grants US Bank, Wells Fargo and Rushmore's motion on the Dirwayis' CPA counterclaim and third-party claims.

### III. ORDER

Therefore, it is hereby **ORDERED** that Wells Fargo's motion to dismiss for failure to state a claim (Dkt. 14) and Rushmore and US Bank's motion for summary judgment (Dkt. 34) are **GRANTED in part** and **DENIED in part** as stated herein.

Dated this 10th day of April, 2018.

BENJAMIN H. SETTLE
United States District Judge