UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| US BANK N.A., AS LEGAL TITLE TRUSTEE FOR TRUMAN 2012 SC2 TITLE TRUST,<br><br>        Plaintiff,<br>   v.<br><br>JOHN DIRWAYI, et al.,<br><br>        Defendants.<br>_____<br><br>JOHN DIRWAYI and NATALIYA S. KAZIMIRETS,<br><br>        Third-Party Plaintiffs,<br>   v.<br><br>WELLS FARGO BANK, N.A., RUSHMORE LOAN MANAGEMENT SERVICES, LLC,<br><br>        Third-Party Defendants. | CASE NO. C17-5532 BHS<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DEFAULT JUDGMENT, AND DECREE OF FORECLOSURE |

This matter comes before the Court on Plaintiff US Bank N.A.'s, as Legal Title Trustee for Truman 2012 SC2 Title Trust ("US Bank"), unopposed motion for summary judgment, default judgment, and decree of foreclosure. Dkt. 59. The Court has

ORDER - 1

considered the pleadings filed in support of the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

## I. PROCEDURAL AND FACTUAL BACKGROUND

On July 30, 2017, Defendants and Third-Party Plaintiffs John Dirwayi and Nataliya Kazimirets ("Dirwayis") executed a note and deed of trust to secure a home in Fife, Washington ("Residence"). Dkt. 1-1, Exhs. A, B. In 2009, the original lender assigned the deed to Third-Party Defendant Wells Fargo Bank N.A. ("Wells Fargo"), which resulted in Wells Fargo also servicing the note. *Id*., Exh. C.

In 2009, the Dirwayis requested mortgage payment assistance. Dkt. 33, ¶ 7. On January 27, 2010, the Dirwayis and Wells Fargo entered into a loan modification agreement. *Id*. at 41–42.

In 2011, the Dirwayis approached Wells Fargo regarding another loan modification. On May 14, 2011, Wells Fargo wrote the Dirwayis informing them that they "may be eligible for a modification offered by Fannie Mae (the owner of your loan)." *Id*. at 44. Wells Fargo instructed the Dirwayis that, to accept the offer, they were required to make three trial period payments instead of the regular monthly payments. *Id*. The letter also states that "[a]fter all trial period payments are timely made, your mortgage will be permanently modified." *Id*. In a "frequently asked questions" supplement, Wells Fargo stated that "[y]our loan will not be permanently modified until you successfully complete the Trial Period Plan and you enter into a Loan Modification" and that "[o]nce you make all of your trial period payments on time, we will send you a Loan Modification Agreement detailing the terms of the modified loan. The Loan

Modification Agreement will become effective once you and we have signed it." *Id*. at 46–47. It is undisputed that the Dirwayis timely made the trial payments.

On September 9, 2011, Wells Fargo wrote the Dirwayis informing them that they were eligible for a loan modification and enclosed a modification agreement ("Second Modification"). *Id*. at 51. The letter stated that, "[i]f you comply with the terms of the required Trial Period Plan, we will modify your mortgage . . . ." *Id*. In order to accept the offer, Wells Fargo instructed the Dirwayis to sign and return both copies of the Second Modification. *Id*. The Dirwayis were interested in the modification, so they signed the Second Modification and returned it to Wells Fargo. Nataliya, however, signed the Second Modification as "N. Dirwayi/N. Kazimirets" when the printed name below the signature line was "Nataliya S. Kazimirets." *Id*. at 58. Wells Fargo rejected the documents because Nataliya's signature did not match the printed name below the signature line.

Wells Fargo sent a second set of documents to the Dirwayis with instructions to sign the documents exactly as the printed name appeared on the document. *Id*. at 60. On October 8, 2011, the Dirwayis signed the documents, but Nataliya signed as "N. Kazimirets." *Id*. at 65. The Dirwayis returned the documents and continued to remit the reduced monthly payments. Wells Fargo rejected the documents, and the delay violated Fannie Mae's requirement that the documents be signed by October 1, 2011.

In early 2012, Wells Fargo requested updated financial information from the Dirwayis. *Id*. at 67–82. On March 28, 2012, Wells Fargo informed the Dirwayis that they did not qualify for a loan modification under the Home Affordable Modification

Program. *Id*. at 92–93. On April 3, 2012, Wells Fargo wrote the Dirwayis informing them that they may be eligible for a modification through Fannie Mae. *Id*. at 96–101. The Dirwayis rejected the proposed modification and trial payment plan.

On July 23, 2012, Wells Fargo referred the Dirwayis' loan for foreclosure proceedings. On September 27, 2012, the foreclosing Trustee, Quality Loan Service Corp. of Washington, recorded a notice of trustee's sale scheduled for January 25, 2013. *Id*. at 106–109. On November 5, 2012, Wells Fargo transferred the loan to US Bank and transferred servicing of the loan to Third-Party Defendant Rushmore Loan Management Services, LLC ("Rushmore"). *Id*. at 111–112; Dkt. 34-1, ¶ 7.

On July 26, 2013, the Dirwayis filed suit in state court to stop the foreclosure proceeding and asserted a claim for breach of the Second Modification. At some point in early 2014, the parties reached a settlement. On April 29, 2014, the Dirwayis' attorney sent Rushmore's attorney signed copies of another loan modification agreement ("2014 Proposed Modification"). Dkt. 34-3. The proposed payment amount was similar to the Second Modification, and both agreements established a 40-year payment plan. *Id*. The new modification, however, indicated an increased deferred principal balance. *Id*. Although the Dirwayis signed the agreement, their attorney instructed Rushmore's attorney to hold the signed copies in trust until the Dirwayis delivered a countersigned copy of the settlement agreement. *Id*.

On May 29, 2014, all parties in the suit executed a notice of settlement, and the court subsequently dismissed the complaint without prejudice. US Bank and Rushmore assert that, "in order to accommodate" the Dirwayis, they "entered a system adjustment"

to alter the terms of the loan. *Id*. ¶ 12.  The altered terms appear to be consistent with the terms of the 2014 Proposed Modification.  *Id*.  After the adjustment, the Dirwayis made payments of $2,058.81 from May 2014 to May 2015.  *Id*. ¶ 13.

In May 2015, Rushmore's attorney sent the Dirwayis' attorney a letter stating that the 2014 Proposed Modification would be revoked if the Dirwayis did not sign and return the proposed settlement agreement.  Dkt. 42 at 5.  On June 1, 2015, Rushmore's attorney informed the Dirwayis' attorney that he could no longer accept payments on behalf of Rushmore.  *Id*.  On July 25, 2015, the Dirwayis' attorney sent Rushmore's attorney a letter with the Dirwayis' June 2015 and July 2015 payments.  *Id*. at 7.  Rushmore's attorney returned the checks and informed the Dirwayis' attorney that Rushmore was in the process of revoking the loan modification agreement because the Dirwayis failed to enter the settlement agreement.  *Id*.

On April 27, 2016, US Bank filed the instant judicial foreclosure action in Pierce County Superior Court for the State of Washington.  Dkt. 1-1 at 2–39.  On February 10, 2017, the state court entered an order of default against all unknown defendants in the complaint.  Dkt. 2-3 at 4–5.  On June 6, 2017, the Dirwayis filed an answer with affirmative defenses and counterclaims and included a third-party complaint.  Dkt. 1-1 at 40–58.  The Dirwayis asserted counterclaims against US Bank for breach of contract and violation of the Washington Consumer Protection Act ("CPA"), RCW Chapter 19.86.  *Id*.  In the third-party complaint, the Dirwayis asserted claims against Wells Fargo and Rushmore for breach of contract, equitable indemnity, unjust enrichment, and violations of the CPA.  *Id*.

On July 12, 2017, Wells Fargo removed the matter to this Court. Dkt. 1.

On August 31, 2017, Wells Fargo filed a motion to dismiss. Dkt. 14. On November 15, 2017, the Court converted the motion to a motion for summary judgment and requested subsequent briefing. Dkt. 25. On April 10, 2018, the Court granted the motion in part and denied the motion in part. Dkt. 45. On June 28, 2018, Wells Fargo filed a second motion for summary judgment on the Diwayis's remaining breach of contract claim. Dkt. 52. The Diwayis did not respond. On September 13, 2018, the Court granted Wells Fargo's motion. Dkt. 63.

On August 13, 2018, US Bank filed the instant motion for summary judgment, default judgment, and a decree of foreclosure. Dkt. 59. As of the date of this order, the Diwayis have not responded.

**II.     DISCUSSION**

**A.     Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must

present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.    US Bank's Motion**

In this case, US Bank moves for summary judgment on terms either identical to or substantially similar to the terms of the Second Modification. Dkt. 59 at 8–16. The Court has ruled that the Diwayis failed to perform their obligations under the Second Modification and therefore they may not maintain a breach of contract claim based on

that agreement. Dkt. 63 at 8. However, precluding a party from maintaining a claim for damages does not necessarily mean that the contract is invalid. On the issue of invalidity, US Bank and Wells Fargo argued that the Dirwayis failed to properly sign the Second Modification, which resulted in improper formation of the contract. Dkt. 45 at 9. In its previous order, the Court found US Bank's position suspect because US Bank's complaint seeks enforcement of the Second Modification. *Id.* Thus, a conclusion that the Second Modification was not properly formed and that the original loan terms should be enforced would go beyond the bounds of the complaint, which the Court will not do. In other words, US Bank filed a complaint for enforcement of the Second Modification and may not alter the scope of its claim in a motion for summary judgment. Therefore, the Court agrees with US Bank's current motion seeking judgment on the terms of the Second Modification.

On this issue, the Court finds that US Bank has submitted sufficient admissible evidence to establish a right to judgment. The Dirwayis have failed to submit any evidence in opposition. Where no factual showing is made in opposition to a motion for summary judgment, the court is not required to search the record *sua sponte* for some genuine issue of material fact. *See Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). Likewise, "[i]t is not our task, or that of the district court, to scour the record in search of a genuine issue of triable fact. We rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). Therefore,

the Court grants US Bank's motion because it has shown that it is entitled to judgment as a matter of law and that no question of material fact exists for the factfinder.

Regarding a default judgment, the Court concludes that US Bank is entitled to a default judgment for all unknown defendants in the complaint because US Bank has established priority to the property over any unknown occupier or party claiming interest in the Residence. Thus, the Court grants US Bank's motion on this issue.

### III. ORDER

Therefore, it is hereby **ORDERED** that US Bank's unopposed motion for summary judgment, default judgment, and decree of foreclosure, Dkt. 59, is **GRANTED**. The Court will enter a judgment as a separate docket entry.

Dated this 4th day of October, 2018.

BENJAMIN H. SETTLE
United States District Judge